[No. 12500.   Department Two.   January 10, 1916.]

ADALINE DONALDSON, *as Administratrix etc., Respondent,* v. GREAT NORTHERN RAILWAY COMPANY, *Appellant.*[1]

APPEAL—REVIEW—VERDICT.   Upon conflicting evidence supporting either side, the verdict of a jury is conclusive, regardless of the weight of the evidence.

MASTER AND SERVANT—INJURY TO SERVANT — NEGLIGENCE — PROXIMATE CAUSE—EVIDENCE—QUESTION FOR JURY.   The evidence of a dozen experts who stated positively that the conditions after a boiler explosion showed conclusively that the explosion was caused by low water does not conclusively establish the same as a scientific fact, where their statements were only opinions drawn from previous experience; and the question is one for the jury where the fireman, the only one in a position to know positively whether there was water in the boiler, testified that the water glass showed sufficient water to prevent an explosion.

SAME—NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.   In an action for the death of an engineer through the explosion of a locomotive boiler, it is for the jury to determine whether the railroad company was guilty of negligence in converting a coal burning locomotive into an oil burner without changing button head bolts or using fusible plugs, and as to the presence or absence of scale on the crown sheet, where there was evidence that button head bolts had a tedency to become overheated by an oil flame, and taper heads were used on oil burners, and that fusible plugs were a means of preventing explosions.

[1]Reported in 154 Pac. 133.

6—89 WASH.

APPEAL—REVIEW—TRIAL—MISCONDUCT OF COUNSEL—INVITED ERROR. In an action for the death of a locomotive engineer under the Federal employers' liability act, it is not misconduct on the part of plaintiff's counsel warranting a new trial that he offered in evidence the report of Federal inspectors, which, by 36 U. S. Stat. at L. 916, is made inadmissible for any purpose in any suit, where the defendant's counsel, in his opening statement, explained the making and publication of such reports and stated that plaintiff had access to the report and could produce it, if they desired, as correct; since the production was challenged and the error invited.

DEATH—DAMAGES—EXCESSIVE VERDICT. A verdict for $8,500 in favor of a mother for the death of a son is not excessive, where he was a locomotive engineer earning about $175 a month, living with his mother and furnishing $75 a month to maintain the home kept for him by her, and had expressed his intention of not marrying as long as his mother lived.

JURY—RIGHT TO JURY TRIAL—FEDERAL CONSTITUTION. The seventh amendment to the Federal constitution relative to trial by jury does not apply to trials in state courts; and hence, in an action in a state court under the Federal employers' liability act, a verdict agreed to by ten jurors does not violate rights under the Federal constitution.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered August 3, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Affirmed.

*F. V. Brown* and *F. G. Dorety*, for appellant.

*Higgins & Hughes* and *James McCabe* (*Hyman Zettler*, of counsel), for respondent.

PER CURIAM.—This is an appeal from a judgment for the plaintiff entered after denial of motions for judgment *non obstante* and new trial, upon the verdict of a jury in an action brought under the Federal employers' liability act, to recover damages for the death of her son, Vance H. Thoms, which she alleged was due to the negligence of the appellant.

On November 5, 1913, Thoms was an engineer in the employ of the appellant, and was on that date operating engine No. 1,902, which was one of three engaged in hauling a freight train between Skykomish and Scenic. When near

the station at Tonga, the boiler exploded and Thoms was killed. It is admitted that engine No. 1,902 was originally a coal burner and, several years prior to the accident, had been changed into an oil burner. When equipped as a coal burner, the stay bolts, which extend from the main shell through the water space and support the crown sheet, were secured to the latter by button heads, as is customary in coal burners. When the change was made from coal to oil, these bolt heads were not changed. Whether the explosion was due to this fact is a principal ground of controversy.

The appellant and the respondent each have an explanation of the cause of the explosion. The respondent asserts that it was due to the use of button head instead of taper head bolts on an oil burner; that it was due to the lack of fusible plugs, and to an accumulation of scale on the crown sheet; all of which it is alleged was due to negligence of the appellant. Appellant contends that the explosion was due entirely to low water in the boiler, which was solely the negligence of the deceased. Testimony was introduced in support of each theory, and there is thus presented a direct conflict in evidence on which the verdict of the jury, if the question was properly submitted, is conclusive, regardless of our own opinion as to weight of the evidence. *Parker v. Washington Tug & Barge Co.*, 85 Wash. 575, 148 Pac. 896; *Lombardi v. Bates & Rogers Construction Co.*, 88 Wash. 243, 152 Pac. 1025. Ordinarily we will not, under such circumstances, review the record further than to discover whether there is evidence to support the verdict, and having found such evidence, we will accept the verdict as conclusive. However, the appellant urges that the evidence presented by the respondent is so meager, unreliable, and lacking in probative value, and the evidence opposing it in such preponderance, that the denial of the motion for judgment *non obstante veredicto* or for new trial was an abuse of discretion on the part of the trial court. The amount of the verdict and the seriousness with which appellant argues the point, coupled

with the somewhat novel character of the grounds urged and their evident importance to appellant, have impelled us to give as briefly as possible the reasons why we are unable to accede to the arguments advanced.

The essence of appellant's contention is that the condition of the crown sheet, bolts and flues after the explosion shows conclusively as a scientific fact that the explosion could not have been due to any other cause than low water. Appellant introduced the testimony of over a dozen boiler makers, master mechanics, boiler inspectors and others, all of whom stated positively that the conditions after the explosion conclusively showed low water as the cause. We do not agree, however, that this testimony established undisputed scientific facts. The evidence at best was of a negative character, and the statements of the witnesses were their opinions drawn from their previous experiences. Because they had never known the conditions shown here to occur except from a low water explosion, they concluded that they could not result otherwise.

On behalf of the respondent, one Hanson, fireman on the engine when the explosion occurred, testified positively that the water glass showed sufficient water on the crown sheet to prevent an explosion. An effort was made to impeach this testimony by introducing a statement prepared by the attorneys for appellant and acknowledged as correct by Hanson while he was in the hospital after the explosion. Hanson denied any knowledge of this statement, claiming that he was unconscious for days after the explosion, and had made no such statements at any time. The credibility of his testimony was clearly for the jury. We have, then, the evidence of the only witness who was in a position to know positively whether there was water in the boiler, to the effect that the water glass indicated sufficient to prevent a low-water explosion. Opposed to this is the testimony of a large number of capable experts that the explosion could have been due only to low water. Under such conditions, it was clearly competent for

the jury to determine that the testimony of Hanson was entitled to greater weight than that of appellant's witnesses. We conclude that, on this ground, appellant was not entitled to judgment, and that the denial of a new trial was not an abuse of discretion.

Appellant contends that, even if it be found that the evidence of low water was a question for the jury, nevertheless the evidence did not show any negligence on the part of the appellant. Coupled with this contention is an attack on the character of respondent's expert testimony. The contention is not made that there was a total lack of evidence of negligence, and there being some evidence that the button head bolts have a tendency to become overheated by an oil flame and allow the crown sheet to give, which would result in an explosion, it was for the jury to say whether their use under such circumstances was negligence. Likewise, as to the use of fusible plugs as a means of preventing explosions and as to the presence or absence of scale on the crown sheet. The reliability of respondent's witnesses and the sufficiency and consistency of their testimony are all questions which the verdict precludes us from reviewing.

The most serious contention, aside from the question of evidence just discussed, is a claim that a new trial should be allowed because of misconduct of respondent's counsel in questioning appellant's witness Dowling, superintendent of safety for the Great Northern, concerning the report of the Federal inspector on this accident. The use of these reports or any part thereof "for any purpose, in any suit or action for damages growing out of any matter mentioned in said report or investigation," is, by statute, 36 Stat. at L. 916, made unlawful. During the cross-examination of the witness, counsel for respondent asked him whether he considered the government inspectors were wrong in their conclusions, if their report on the accident stated that certain conditions found after the explosion could not have resulted from a low-water explosion. After the examination had proceeded for

some time and the witness had had several features of the report stated to him and had been asked his opinion as to the worth of the conclusions, appellant's counsel objected to the line of cross-examination, but did not base the objection on the inadmissibility of the report. Respondent's counsel was stopped; whereupon he attempted to put the report in evidence. The offer was refused. Under the Federal law, the report was absolutely inadmissible, but we do not believe that appellant is in a position to complain of the conduct of respondent's counsel in asking the witness about the report. In his opening statement, appellant's counsel stated to the jury: "We will show that whenever an accident of this kind happens it is reported to the United States government and an inspection is made and reports printed and published, and the data is available so that the plaintiffs can have access to it and produce it if they so desire, as correct." Respondent was justified in construing this as a challenge to produce the report. The fact that the error, if any, was thus invited by appellant, and his failure to object on the ground of the inadmissibility of the report until the harm, if any, had been done, force us to the conclusion that appellant cannot now complain that he was prejudiced by the action of respondent.

The verdict awarded respondent $8,500. Appellant now contends that this amount is excessive and conclusive proof that it was influenced by passion and prejudice. At the time of his death, the deceased was earning about $175 per month. He was living with his mother and furnishing $75 per month or more to maintain the home kept for him by her. He had expressed his intention of not marrying as long as his mother lived. The income from this verdict well invested would not enable the respondent to live in better circumstances than those to which she was accustomed during her son's life, and in view of her possibly greater needs during her declining years, we do not find the verdict excessive. As one of the grounds for a new trial, appellant introduced affidavits to

the effect that respondent had previously supported herself and had other means of support. We do not find, however, that there was an abuse of discretion in denying a new trial on these grounds.

Appellant contends that the instruction that an agreement by ten jurors would be sufficient is in violation of the seventh amendment to the constitution of the United States, which has been generally construed to contemplate a trial by twelve jurors. It is, however, well settled that this amendment does not apply to the states, and that the verdict in an action in the state court under the Federal employers' liability act is controlled, not by the provision of the national constitution, but by the laws of the state where the suit is pending. The authorities are collated, and the rule well stated, in Roberts, Injuries to Interstate Employees, p. 312, § 176.

Several other grounds of error are urged in the request for a new trial. These have all been considered without convincing us that there is error warranting a new trial of this case.

The judgment is therefore affirmed.

## On Rehearing.

### [Decided March 4, 1916.]

Per Curiam.—Appellant has filed a petition for a rehearing, which, after due consideration, is denied. Our attention, however, is called to a stipulation entered into in connection with a motion to strike respondent's brief because of failure to file in time, and because of which the case was not heard here until the May, 1915, term. The stipulation provides that, if the judgment be affirmed, the interest accruing during the period of continuance might be eliminated from the judgment, in case the court should determine such a condition a proper one in denying the motion to strike the brief. This stipulation was overlooked in writing the opinion, although we had it in mind in reaching our conclusion, and intended to give effect to it. Not having done so in the opinion, we do so now. The opinion is modified to this extent: The

judgment will not bear interest from March 1, 1915, to June 17, 1915. In all other respects, the judgment will stand.